## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **VOTEAMERICA and** | ) | |
| **VOTER PARTICIPATION** | ) | |
| **CENTER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.   21-2253-KHV-GEB** |
| | ) | |
| **SCOTT SCHWAB, in his official** | ) | |
| **capacity as Secretary of State of the** | ) | |
| **State of Kansas; DEREK SCHMIDT,** | ) | |
| **in his official capacity as Attorney** | ) | |
| **General of the State of Kansas;** | ) | |
| **STEPHEN M. HOWE in his official** | ) | |
| **capacity as District Attorney of** | ) | |
| **Johnson County,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter comes before the Court on Defendant Scott Schwab's ("Defendant Schwab") Motion to Compel Production of Documents **(ECF No. 90).** The documents in question relate to mailings made by Plaintiff Voter Participation Center, ("VPC") to citizens of states other than Kansas and the tracking of those mailings. After duly considering the Motion, VPC's Response **(ECF 96,)** Defendant Schwab's Reply **(ECF 98,)** and as discussed below, the Court **GRANTS in part and DENIES in part** Defendant Schwab's Motion.

1

I.      **Background**[1]

Plaintiffs brought this case for declaratory and injunctive relief against Defendants for violation of their First and Fourteenth Amendment rights and breach of the dormant Commerce Clause based upon passage of HB 2332. In relevant part, HB 2332 prohibits out-of-state entities or individuals from mailing or causing to be mailed, an advance mail ballot application to a Kansas voter, ("out-of-state distributor ban.")  It further bans the mailing of any advance mail ballot application to potential voters that has been personalized with the voter's personal information, ("Personalized Application Prohibition.") Defendants argue Plaintiffs have no standing, and the provisions of HB 2332 are directed only to non-expressive conduct. Further, Defendants take the position the State has a strong regulatory interest in elections, and HB 2332 is intended to avoid fraud, voter confusion, and to promote the orderly administration of the electoral process. Finally, Defendants contend the dormant Commerce Clause does not apply, because they have express authority to regulate the manner of state elections.

On September 8, 2021, the District Judge held an evidentiary hearing on Plaintiffs' Motion for Preliminary Injunction to enjoin enforcement of HB 2332. In applying the strict scrutiny standard, the District Judge found HB 2332 is not narrowly tailored to: 1) prevent voter fraud; 2) serve the State's interest in minimizing voter confusion; or 3) serve the State's interest in the orderly administration of elections. The District Judge further found

---

[1] Unless otherwise indicated, the information recited in this section is taken from the Complaint (ECF No. 1), the Response to Plaintiff's Motion for Preliminary Injunction (ECF No. 29), Memorandum and Order (ECF No. 50.) This background information should not be construed as judicial findings or factual determinations.

Plaintiffs are likely to demonstrate HB 2332 restricts their ability to engage in protected First Amendment activities, Plaintiffs would suffer irreparable harm without an injunction, Plaintiffs' injury outweighs the potential harm to the government, and public interest weighs in favor of protecting First Amendment rights. The District Judge granted the preliminary injunction relative to the two sections of HB 2332 in question.

Subsequently, upon request of the parties, a Stipulated Order for Permanent Injunction and Declaratory Judgment, ("Stipulated Order") as related to the out-of-state distributor ban in HB 2332 was entered.[2]  Now, the only remaining claims in this case are the First and Fourteenth Amendment challenges to the Personalized Application Prohibition. The parties further memorialized in the Stipulated Order the Personalized Application Prohibition clause does not apply if the recipient is a registered voter who requests the application be completed with his information by the third party prior to mailing.[3]

## II.   Parties' Discovery Dispute

This dispute involves two requests for production ("RFP") propounded by Defendant Schwab to VPC:

> RFP 12 requests: "All documents referencing, regarding, or involving the receipt of VPC mailers by ineligible or deceased registrants in any state."

> RFP 13 requests: "All documents that track the number of advance/absentee mail ballot applications that VPC has sent to ineligible or deceased registrants in any state."

---

[2] ECF 73
[3] *Id.*

III.    **Compliance with D. Kan. Rule 37.2**

Pursuant to D. Kan. Rule 37.2, this Court "will not entertain any motion to resolve a discovery dispute" unless the moving party has "conferred or has made reasonable effort to confer with opposing counsel" before filing a motion. Defendant Schwab's Memorandum in support of his Motion indicates the parties have met and conferred twice and exchanged follow-up correspondence and emails.[4]  The Court finds the parties have sufficiently complied with D. Kan. Rule 37.2.

IV.    **Parties' Positions**

Defendant Schwab asserts both RFPs are relevant and not overbroad, and his requests are proportional to the needs of the case. In stark contrast, VPC argues the requests are irrelevant and overbroad, and they are not proportional to the needs of the case.

V.    **Discussion**

A.  **Legal Standard**

Discovery is governed by Fed. R. Civ. P. 26 which provides, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[5] "There is a presumption in favor of disclosure of information," and, "Relevance is to be

---

[4] ECF 91, Attachment A.
[5] Fed. R. Civ. P. 26(b)(1).

"construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on" any party's claim or defense.[6] Further, "Information within this scope of discovery need not be admissible in evidence to be discoverable."[7] Discovery should proceed "unless *it is clear* that the information can have *no possible bearing*" on the claims or defense of a party.[8]

If the discovery sought appears relevant, "the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery, 1) does not come within the scope of relevancy as defined under Rule 26(b)(1), or 2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."[9] On the other hand, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery bears the burden to show the relevancy of the request.[10] Relevancy determinations are generally made on a case-by-case basis.[11]

The discovery must be both relevant and proportional to the needs of the case. The court determines proportionality based upon consideration of the following factors:  1) the importance of the issues at stake in the action; 2) the amount in controversy; 3) the parties'

---

[6] *Williams v. UnitedHealth Grp.*, No. 18-2096-HLT, 2020 WL 528604, at *1 (D. Kan. Feb. 3, 2020) (quoting *Gilmore v. L.D. Drilling, Inc.*, No. 16-2416-JAR, 2017 WL 2439552, at *1 (D. Kan. June 6, 2017)).

[7] Fed. R. Civ. P. 26(b)(1).

[8] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001) (citing *Scott v. Leavenworth USD No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999) (emphasis in original)).

[9] *Riley v. PK Mgmt., LLC*, No. 18- 2337-KHV-TJJ, 2019 WL 1509861, at *2 (D. Kan. Apr. 5, 2019) (citing *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003)).

[10] *Id*. (citing *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008)).

[11] *Id.* (citing *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011)).

relative access to relevant information; 4) the parties' resources; 5) the importance of the discovery in resolving the issues; and 6) whether the burden or expense of the proposed discovery outweighs its likely benefit.[12]

### B.  The Documents, as Requested, are Relevant but Overbroad

1.  Both Discovery Requests are Relevant.

Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any party's" claim or defense.[13] Further, "Information within this scope of discovery need not be admissible in evidence to be discoverable."[14]  Discovery should proceed "unless *it is clear* that the information can have *no possible bearing*" on the claims or defense of a party.[15]

The remaining claims after entry of the Stipulated Order are the First and Fourteenth Amendment challenges to the Personalized Application Prohibition.[16]  Those claims are further narrowed due to the provision in the Stipulated Order limiting the Personalized Application Prohibition to apply only when a personalized application is completed and mailed absent a request from the voter.[17] Defendant Schwab reiterates the purpose of HB

---

[12] Fed. R. Civ. P. 26(b)(1).
[13] *Williams v. UnitedHealth Grp.*, No. 18-2096-HLT, 2020 WL 528604, at *1 (D. Kan. Feb. 3, 2020) (quoting *Gilmore v. L.D. Drilling, Inc.*, No. 16-2416-JAR, 2017 WL 2439552, at *1 (D. Kan. June 6, 2017)).
[14] Fed. R. Civ. P. 26(b)(1).
[15] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001) (citing *Scott v. Leavenworth USD No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999) (emphasis in original)).
[16] ECF 73.
[17] *Id.*

2332 is threefold: 1) prevention of voter fraud, 2) reduction of voter confusion, and 3) promotion of the orderly administration of elections.[18]

To support his requests, Defendant Schwab argues one of the causes of voter confusion is the mailing of personalized applications to individuals who are deceased or who are ineligible to vote.  As such, the documents requested by Defendant Schwab could lead to discoverable information, should the documents show personalized applications are mailed to ineligible or deceased registrants.  They are also relevant to identify potential witnesses who received the applications and were confused by receiving such mailings. Because VPC, an out-of-state, non-profit organization, whose mission is to facilitate political engagement by providing personalized ballot applications and Defendant Schwab, who argues, among other things, the receipt of those applications could lead to fraud and cause voter confusion when mailed to deceased or ineligible voters, the information requested is relevant to the claims and defenses raised by both parties.

2. Both Requests are Overbroad

Having found the requests relevant, the Court will now discuss the overbreadth nature of the requests.  VPC seeks to limit its production of documents under RFP 12 and RFP 13 to those mailings made only to Kansas residents.[19] However, the Supreme Court recently declared there is justification for one state to review data from other states to

---

[18] ECF 91.  *See also* Conf. Comm. Rep. Brief, House Bill No. 2332, Session of 2021, at 7-2332 (Kan. April 8, 2021).
[19] ECF 91, Exh. 5.

protect against voter fraud.[20]    Therefore, the information requested is discoverable and potentially admissible.

RFP 12 is overbroad, as originally written, due to the general request for information relating to "VPC mailers." It appears to the Court that the parties have attempted to reach agreement on the definition of "mailers" through the meet and confer process required by D. Kan. Rule 37.2.[21] However, this Court cannot quite discern what definition the parties agreed to.  Correspondence from VPC's counsel sets out that the parties agreed:

> "Mailers" means mailers identified in VPC's Complaint and preliminary injunction motion, *see* Compl. ¶29 (discussing "mailers"), Dkt. No. 25, at 9 (using the term "VPC's mailers") – i.e., VPC's mailings to Kansas registrants that include a partially prefilled advance mail ballot application.[22]

The Court reviewed the Complaint for clarification.   Paragraph 30[23] of the Complaint references a cover letter sent to voters, a printed copy of an advance mail voting application, and a pre-addressed, postage-paid envelope addressed to the voter's county election office.   The Complaint also indicates an advance mail voting application is completed with some of the voter's personal information obtained from state [voter] registration records.[24] Next, the Court examined the Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction and found discussion of three types of mailings: fliers that encourage mail voting, information about voting by mail and

---

[20] Brnovich v. DNC, 141 S.Ct 2321, 2348 (2021.) (Finding Arizona did not have to wait for fraud to occur within its own borders before passing a statute passed to avoid voter fraud.)
[21] ECF 91, Exh. 5.
[22] *Id.*
[23] The Court could not find discussion of mailers in Paragraph 29 of the Complaint.
[24] ECF 1, p. 10.

personalized advance mail ballot applications.[25]  The correspondence from counsel further suggests the agreed-upon definition of 'mailers' is, "VPC's mailings to Kansas registrants that include a partially prefilled advance mail ballot application."[26]

The Court cannot find a clear definition of "mailers," as construed by the parties, from the documents it reviewed and determines the parties may not have a full understanding and meeting of the minds in their attempt to define "mailers." Regardless, it is evident, based upon Defendant Schwab's other requests for production,[27] the limited application of HB 2332 as contemplated by the Stipulated Order, and the nature of the parties' claims and defenses, that the information Defendant Schwab likely seeks is related to those advance/absentee mail ballot applications mailed by VPC and the tracking thereof.

The Court also notes that RFP 12 should be further narrowed due to the Stipulated Order of the parties which limits the application of HB 2332 to only those personalized advance mail applications that are mailed absent a request from the voter.  As such, RFP 12 should only include those advance/absentee mail ballot applications that VPC has, at least partially, completed and mailed to potential voters.

The Court will limit RFP 12 to include, "All documents referencing, regarding, or involving the receipt of partially prefilled or personalized advance/absentee mail ballot applications by ineligible or deceased registrants in any state."

---

[25] ECF 25, pg. 9.
[26] ECF 91, Exh. 5.
[27] *See* ECF 91, Exh. 2, showing 17 of Defendant Schwab's 21 RFPs request information related to advance mail ballot applications.

RFP 13 requests "All documents that track the number of advance/absentee mail ballot applications that VPC has sent to ineligible or deceased registrants in any state." RFP 13 does not reference VPC mailers, so that analysis is not necessary for RFP 13. Again, the Stipulated Order has narrowed application of HB 2332 to include only those applications with prefilled, personal information. As such, RFP 13 should be narrowed to include only partially prefilled or personalized advance/absentee mail ballot applications.

### 3. The Discovery is Proportional to the Needs of the Case

Upon finding the requested documents relevant and narrowing the scope of the production, the Court must next determine whether the request is proportional to the needs of the case.[28]  As previously stated, there are six considerations for the Court in determining proportionality.[29]  Plaintiff argues the discovery requests are not proportional to the needs of the case for three reasons, 1) "It has no bearing on the actual issues in the case;" 2) "VPC has committed to produce numerous categories of similarly irrelevant documents…;" and 3) It is "not important to resolving the issues in this case."[30] But these arguments are more accurately described as relevance arguments as opposed to proportionality arguments.

The issues at stake in this case relate to the State's ability to regulate and ensure fair and orderly elections and to protect from infringement on Plaintiffs' First and Fourteenth Amendment rights.  Proportionality, as it relates to this case is delicate.  All are issues this Court finds extremely important, not only to the parties, but to the public at large. And, this

---

[28] Fed. R. Civ. P. 26(b)(1).
[29] *Id.*
[30] ECF 96

Court is aware, this is not a case where Plaintiff has asked for sole monetary damages. The prayer in the Complaint seeks, among other things, declarations and injunctive relief. Nevertheless, the importance of determining the First and Fourteenth Amendment Rights of Plaintiff as weighed against the right of the State to ensure its elections are honest and orderly, from a proportionality standpoint, far outweighs the limited fiscal amount in controversy. After narrowing by the Court, both RFPs request information for any state to which VPC has sent partially filled or personalized advance/absentee ballot applications. The Court considers whether requiring VPC to provide information connected with any state to which it sent personalized ballot applications is proportional. VPC, in its March 30, 2022, correspondence acknowledges it does not engage with voters in all fifty states. Rather, its activities are limited to twenty states.[31] The Court believes information from those twenty states is proportional to the serious issues at stake in this case. The information requested by Defendant Schwab in his RFPs, and narrowed by the court, is not information to which he has access; the information can be obtained only from Plaintiff. Finally, the discovery is necessary to resolving the claims and defenses raised, and the benefit of the discovery, as narrowed, outweighs the burden or expense incurred in its production.

### 4. Level of Scrutiny at Trial does not Impact Discovery

The parties advance arguments regarding the appropriate level of scrutiny to be considered here, but the Court believes these arguments have no bearing on these discovery

---

[31] ECF 91, Exh. 5, p. 9.

issues. It is clear the District Judge analyzed HB 2332 under a strict scrutiny standard in its Memorandum and Order Sustaining Plaintiff's Motion for Preliminary Injunction.[32]  The parties are reminded, "[t]he purpose of a preliminary injunction is to preserve the relative position of the parties until a trial on the merits can be held."[33]

While the District Judge applied the strict scrutiny standard at the preliminary injunction stage, the possibility that the same standard will be applied at the trial level is not an acceptable angle of analysis for determining the permissibility of discovery.  Nor is it appropriate for this Court to attempt to predict how the District Judge will scrutinize HB 2332 based upon the narrowing of its application in the Stipulated Order entered **after** the Memorandum and Order granting the preliminary injunction was entered.

## VI.  Conclusion

Based on the foregoing, the Court **ORDERS** VPC to supplement its answers to RFPs 12 and 13, on or before June 16, 2022, as modified by the Court:

> RFP 12: All documents referencing, regarding, or involving the receipt of partially prefilled or personalized advance/absentee mail ballot applications by ineligible or deceased registrants by any state.

> RFP 13: All documents that track the number of partially prefilled or personalized advance/absentee mail ballot applications that VPC has sent to ineligible or deceased registrants in any state.

**THEREFORE**, Defendant's Motion to Compel Production of Documents **(ECF No. 90)** is **GRANTED in part and DENIED in part** for the reasons set forth above.

**IT IS SO ORDERED.**

---

[32] ECF 50.
[33] *University of Texas v Camenisch*, 101 S.Ct. 1830, 1834 (1981.)

Dated: June 2, 2022

<u>s/ Gwynne E. Birzer</u>
GWYNNE E. BIRZER
U.S. Magistrate Judge